Yuri Abramov criticized corruption in local government and later he criticized inhumane activities in prisons. This is not a case like I'm sure a huge number that you've seen before of someone coming and telling you I don't believe in communism and therefore look at all the evidence from 1953 and the Soviet Union and don't send me back. That's not this case. And Judge Warren, the immigration judge, did not realize that. He did not look at this case based on the specific facts of my client, Yuri Abramov. We do answer, it's not contained in the briefs but something that I found very curious when I was reading the record. It appears as though at the commencement of the hearing the immigration judge excluded the translator. Is that right? That's right, Your Honor. So you proceeded without the translator that you had brought to the hearing, right? Yuri, we applied for asylum in 1994. This case has been sitting now for ten years. When Yuri first came here he spoke no English. He speaks pretty good English now. If you'll look at the transcript you'll see that it caused some problems but we got through without a translator. The ultimate finding was that there were serious reasons to believe that he committed a particularly serious crime. That's the issue the court has to resolve. Were there those reasons? What did the immigration judge focus on? Time and again he focused on the Soviet court system, the trial in 1984 and then the supposed re-hearing which Yuri, of course, didn't attend and know about in 1993 when there was a change from rape to attempted rape. That was critically important to the judge. You can find that in literally ten different places in his oral opinion. He also focused on other issues not germane to what actually happened. He focused on burning of court documents. What was the testimony? The testimony was from the alleged victim Moskvilenko. Did these documents have anything to do with her? No evidence in the record that it did. He focused on a trial in a system where the record certainly is undisputed and I think it rises to the level of common knowledge it was a Soviet trial during the time of Soviet dictatorship when the So are we supposed to presume that every criminal trial that took place in the Soviet Union for any type of crime whatsoever was tainted and that all defendants who were convicted were convicted because they were political prisoners? No. No matter what the charge? Isn't that what you're saying? What I'm saying, Judge, is that we need to look at what actually the evidence was about whether the act was committed, the nature of the act. Didn't your client at first suggest, well, at first he suggested that he didn't have a lawyer? I think he always admitted he had a lawyer. The question was whether he was represented, but he first suggested he didn't have a chance to testify and then that later was refuted. Well, what he said was he was not allowed to testify about everything. He was only allowed to testify about matters that the court felt were allowable. He wasn't allowed to address the issues that he thought were central to his case. There was a question about being allowed to testify. The evidence, I don't think, is any dispute, Your Honor, what was meant by that. Yes, he was able to give some testimony, but that did not mean he was able to talk about the critical issues. So I don't think there's the record reflects any change in his testimony in that regard. Well, I don't think the judge saw it that way from my reading of the record. He found your client to be lacked credibility with respect to those issues. Well, as the U.S. government attorney points out, there's not a specific finding on credibility. I certainly read his decision as saying that he found Urey not to be credible, and that was why he could disregard all of Urey's testimony. I think he did make that finding, and under this authority that I cited to the court, I think the court has to look at that and see what was the basis for finding that he wasn't credible. Is it speculation and conjecture or was it actual evidence in the record? What was his defense? His defense was that he never had any type of intimate relation with this girl? He was never with her alone. Okay. So we don't have a Kobe Bryant here. We don't have a situation where there's sex and there's a question about whether it's consensual or not. So we have a straight-up question of whether there was a rape, right? So you have a trial. You then have a situation where the girl who was allegedly raped testifies. He testifies. He gets convicted. He gets sentenced to ten years in jail. And now he says it was all because he was an outspoken critic of the government? That's right. The evidence in the record, Your Honor, is that during this time, the Federal — the Soviet government was fabricating charges such as rape as a way to deal with political dissonance. That's in the record. The — what we'd like the Court to focus on is what is the evidence in the record to show that there were serious reasons to think that he committed this crime? I've just testified, or I've just told the Court, it looks to me like the judge is looking at Soviet trials and he's looking at the 1993 document from this lower court and finding it to be regular. I'd like the Court to look at what was the evidence that he committed this attempted rape. We have a testimony from the alleged victim. One point she says he raped her. Another point she says he didn't rape her. One point she says he and Mr. Fuloff and others tried to rape her. She lied about whether she had prior sex relationship. She had a relationship with the son of the police inspector. Now, who gave whom what diseases or what was going on is not that clear from the record, but the record is clear that she had relations with the police inspector's son. All these facts were disregarded by the immigration judge. He focused on the trial. He also disregarded what the search warrant found when they were going to investigate whether there was evidence of Uries committing rape or attempted rape. What did they look for? What did they find? What did they take? Documents having to do with his political acts. There was no taking his pants. There was no taking other aspects of other parts of his clothing. It was just the kind of evidence you would take if you're going to find a political criminal and you're going to do something about it. Contrast this with the case that the judge, that the Department of Justice has now cited you with regard to particularly serious crimes being committed by the Egyptian, Mr. Huzon. Blood on his hands. The blood matches that of the victim. Cut. Just go through and look at the record to see what that court found to be particularly serious reasons, and then look at what we have here. We don't have that kind of evidence. The court did not specifically state, I find Mr. Abramoff incredible, but that's the kind of evidence we have. That's the effect. The court disregarded his testimony. Was that reasonable? Why did the court do that? What reasons are in the record to show that that was a reasonable thing for the judge to do? There's not the basis for the court to make that decision. Documentary evidence is not discussed by the immigration judge. It's disregarded. Why is it disregarded? How can that be reasonable? The Department of Justice says, well, the information came from Uri and his mother. There's no doubt that the examination of Uri's case started because Uri from day one was protesting this was a fabrication. And there's no doubt that his mother was a tireless assistant. Just because it was their actions that got International Human Rights Organization involved in his case doesn't mean that we throw out immigration, the human rights organization's opinion of his being a political prisoner or they're designating him a political prisoner, or it doesn't mean we throw out all the evidence having to do with his status as a political prisoner. The record does not show that all the documentary evidence is based on Uri's own words. It shows part of it came from Uri, but it shows other sources. The judge did not even mention that evidence. What did the judge focus on? He focused on a country report. Does the country report talk about a change in circumstances having to do with how corrupt local officials now are versus how they were in the Soviet time? No. Does it talk about how things have totally changed in the prisons so that it was different in the Soviet times from now? No. The evidence shows it's the same level of corruption in the local governments, and it's the same situation. Again, this is not a case about someone talking about communism during the communist era and communism in the non-communist era. It's the same situation. The judge didn't focus on that. He focuses on the big picture. He focuses on how he thinks things should be reasonably, how this makes sense to him, this doesn't make sense. He doesn't look at the evidence. Therefore, we believe he abused his discretion. Uri was a political dissident. The Department of Justice won't even admit that. The evidence in the record establishes that he was a political dissident. The record does not establish anything about a rape other than testimony from the alleged victim. I've already talked about the inconsistencies in his, in her testimony. All the other evidence there, the immigration judge did not factor in. That was not reasonable. Uri is entitled to asylum and withholding of removal, in our opinion. He's also entitled to relief under the Convention Against Torture. The U.S. government cites cases having to do with the prison system in Haiti and their program of when a convicted Haitian comes back of their temporarily detaining him, and the cases talk about their being detained for a month. And those cases say, we're not going to hold that to be the level of torture that invokes the convention. Fine. That's not what we have here. We have Uri being sent back to Ukraine where the government admits he's going to be imprisoned, not going to be for a month. We have unconverted, uncontested testimony of the U.S. government. We have Uri, like anybody coming back to Ukraine out of the blue, we have Uri who spent ten years there, who has protested record shows, I think it's 32 times or 34 times, who's been in these underground cells many times, who when he was released was told, you're coming back here. And we have a character of a political dissident who will not shut up. From day one, he's protesting, from 1976 until today. If he goes back to Ukraine and starts talking about what's going on and continues on his complaints about the abuses in the prison system, what's going to happen to him? What does the evidence in the record show about that? That's what this court, that's what the immigration judge should have focused on. That's not what he focused on. You're over your time. I'll give you a little time for rebuttal, but why don't you save that time and let the government. Thank you. Good morning again, Your Honors. John Cunningham from the Department of Justice appearing on behalf of the Attorney General. And may it please the Court. First framework. If you uphold the immigration judge's conclusion that there were, in fact, serious reasons for believing that Mr. Abramoff committed the serious nonpolitical crime of attempted rape before he came to the United States, then Mr. Abramoff is barred from asylum, barred from withholding of removal under the Immigration Act, and barred from withholding of removal under the Convention Against Torture. He remains eligible for deferral of removal under the Convention Against Torture, but only if he met his burden of proving that it was more likely than not that he would be tortured within the meaning of the regulations issued under the Torture Convention, if he is required to return to the Ukraine. The standard for determining whether there were serious reasons for believing that an alien committed a serious nonpolitical crime is established by this Court's case law and other circuits as well. It's simply probable cause. We suggest in our brief that this is an indictment requested by a prosecutor or perhaps a magistrate determining whether to issue a search warrant requested by the police department. And the evidence that the immigration judge looked at has already been recited by my colleague. You have testimony from the victim, and she never wavered from her testimony except to say that he tried to rape her but could not. And so the authorities in the Ukraine adjusted the conviction down from rape to attempted rape. But she was in counsel on the facts. She claimed she was a virgin and it was proven that she was three months pregnant at the time of the trial. She had also evidently been with the, her boyfriend was the son of the police inspector, accused her of giving him a venereal disease and that the transmission of the venereal disease, that was a crime in the Ukraine at the time. This testimony about sexual history is admissible in the Ukraine. And I worry about the trial too because the lawyer assigned to Uri evidently was afraid to defend his client. The judge refused Uri's request for new counsel. The judge accepted written statements from witnesses and refused Uri's demand that the witnesses appear at trial so that they could be cross-examined. What is your response to that? My first response, Your Honor, is as following. This is all according to Mr. Abramov's claims. This is not reflected in any documents that is in the record. This was his explanations to why the trial was unfair. His explanations to why the trial was, in effect, a political act, activist. So there's nothing, there's nothing in the record to show that the things that Judge Nelson just mentioned occurred? The first one is in the record. The one about, the one about the victim's sexual history. That's right. She did change her, that's in the record. Those are in the court documents. So it wasn't just, so the point is it wasn't just his explanation. Yes. That first, the first one is in the record. Everything else, including, including the charge that she was, in effect, forced or pressured or blackmailed by the police to testify against Mr. Abramov because of her relationship with the son of a police captain and then was, was brought in by him very late in the trial. It was not in his original asylum applications or in any of the extensive declarations he gave to the immigration judge. He brought that up at the hearing at the very last moment. He also brought in the inflammatory charge that she had given the police captain a, a dose of, the police captain's son a dose of syphilis and this was, and this was, which was a crime, he said, and this was the source of the police department's leverage over her. The documents that he produced, which were obtained by his mother regarding the victim's medical history, were quite the opposite. She was examined for evidence of syphilis and found to be clean. There was no evidence that she had a relationship with the police department captain's son. This was Mr. Abramov's claim. There's no evidence of that. She did have a, a check for, for history of syphilis and none was found. So as we point out in our brief, what is the possible source of leverage for the police department over her? And, and we, we say that this is, you know, this is the sort of thing that gets hurled at, at, at persons who make accusations of rape all the time and it's unfortunate and it, it is not particularly credible since he didn't say it until the very last moment when he realized he was going to have a problem in explaining why this girl brought the charge against him in the first place. Well, how do you get around, though, her claim that she was a virgin when she's three months pregnant? She claimed at the first trial that she was a virgin and then it later was revealed that she was pregnant. She was inconsistent on that point. But that doesn't mean that she is not a credible witness with regard to rape. And, again, you have to step back and say, well, what's the, as, was there probable cause for believing this? And you had testimony from her and she, as I said, she never, ever wavered from her claim that, that Mr. Abramoff forced himself upon her. There were testimony from several other witnesses. There was the fact that he burned his file. He was given the chance to examine his file and his charge and tried to burn it. There's also the circumstantial evidence that the driver of the, excuse me. What significance is that, though? Say again? What was the, what is the significance of that? He wasn't burning any evidence. Yes, he was. He was burning the file. The file had documents bearing on his case. He was burning evidence, or he tried to. I mean, isn't that the case? The document seized had nothing to do with the rape. The document seized under the search, whether it was warrantless or not, I don't know, had everything to do with his political views and nothing to do with his alleged crime. That's undisputed, isn't it? No, that's not, that's not clear at all, Your Honor. The file. He seized a diary, right? Say again? He seized his personal diary. Yes. They seized the article that he wrote for Pravda, right? They seized a copy of the article that appeared in Pravda that didn't have his name on it. Well, that doesn't have much to do with what happened in that car, did it? Yes, but the file, I mean, we don't know what was in the file. Your Honor is making an assumption that isn't borne out by the record. If all that was in there, then why did he burn it? Why burn a file that had nothing in it besides what you already knew about? Well, his testimony was a formal protest. We don't know one way or the other, do we? No, we don't. Now, let me get back to a point that I'm concerned about, which is it appears to me that there is no specific adverse credibility determination. Is that right? That's correct. Our case law says if there is no specific adverse credibility finding, then we have to take everything the Petitioner says is true. Yes, that's correct. So if we do, if we take what he says is true, then does that equate to a grant of asylum in this case? A grant of asylum? Well, first you have to step back and say. But what you're arguing is that you can't find him credible, but our case law, and I, you know, our case law controls us. I mean, we can't pick and choose what we choose to believe or not. And so if we take all of his testimony, if we're required to take all of his testimony as true, where does that leave us in this case? What you have is evidence on the one hand, which was the fact that there was a rape charge brought against him. And then you have his testimony, and if you accept it as true, that he was a political activist. You don't, but there is a disconnect there. And we say in our brief, it may well have been that Mr. Abramoff was in fact the political activist that he said he was, but that doesn't mean that he wasn't capable of attempted rape. That's part of the duality of human nature. You can be a good person and have political courage and protest the system in your country, and still on a particular night, perhaps having had a bit to drink, try to force yourself on someone. And that is the two are not necessarily inconsistent. No, but then you have to take us to his rendition of the trial in which the prosecutor is giving hand signals to the witness and telling her not to, you know, coaching her on how to testify and that. And then the question upon review, Your Honor, is that that is such – is that such overwhelmingly clear, compelling evidence that required the immigration judge to find, as Mr. Abramoff wanted him to find, which was the trial was a put-up job from the beginning. His testimony was constantly shifting, and Judge Ezra's questions already pointed this out. First, he claimed he didn't have a lawyer. Then he said he did. First, he claimed he wasn't allowed to testify. Then he conceded that he did. First, he said that his lawyer wasn't allowed to examine any of the witnesses against him. Then he conceded that he did. This may not be – this is – this may not – it's not overwhelming evidence that gives you such reliance on this testimony, even if you accept that it's credible, that permits the court to then overturn what the immigration judge found. And again, I get back to the standard here. All you have to find out is whether there was probable cause, probable cause to believe that this person did, in fact, commit this crime. You're not the trial court here. You don't want to find that the charge was true. You simply have to find that was this enough to issue an indictment if you sit at a – if you envision yourself as sitting as a grand jury, or to issue a search warrant if you envision yourself as sitting as a magistrate? Was this enough to have this case go forward? That's the standard. One last point. My time is nearly up. With respect to the deferral of removal under the Convention Against Torture, I simply urge you to look at Mr. Abramoff's own personal history during the nine years that he was in prison in the Ukraine on the rape charge before he was released. During that entire nine-year time, he was never physically beaten whatsoever. He was allowed to wander around the prison and visit with other prisoners. He was allowed to write. He was allowed to send letters outside the prison because he was allowed to communicate with his mother, and they generated this campaign to get his release. He was able to meet a woman, court her, and marry her in the prison, and subsequently he was allowed conjugal visits. His mother also came to the visit and stayed overnight with him. Is this evidence that compels a finding that if he's sent back to the Ukraine, he's going to be subjected to prison conditions so horrendous that this would amount to torture under the regulations? I suggest to the Court that the answer is clearly no. My time is up. If there are no further questions, we're adjourned. Roberts. Any further questions? Roberts. I thank the Court for taking such a point. Mr. Toker, your time has expired, but we'll give you two minutes for rebuttal if you'd like it. The alleged victim never wavered. You just heard that. She never wavered except at one point she said Yuri raped her. At one point she said he attempted to rape her. At one point she said Yuri, full of others, attempted to rape her. At one point she said she was a virgin. At one point I heard that the Court below needed to look at what her testimony was. The U.S. wants you to find there was probable cause, and the way they want you to look at that is focus on her testimony. One thing. They want you to ignore the evidence of fabrication. They want you to ignore all Yuri's testimony. They want you to ignore, ignore, ignore. Okay. That's not proper, but if you'll just focus on Moskalenko's testimony, on the alleged victim's testimony, she wavered everywhere. Is that probable cause? Is it reasonable for the immigration judge or for this Court to say that's how we're going to construe this statute? We're going to look and if one witness, no matter how unreliable, said he raped her, then we don't have a choice. We have to find serious cause. That's not reasonable. The U.S. government judge just said Yuri changed his testimony about whether he had a lawyer, whether he was allowed to testify. I read the transcript yesterday on the way to Seattle. I didn't find that testimony. I urge the Court to go back and look. Yes, a word here, a word there, given Yuri's English, may appear to not represent the exact whole story. I don't see in the transcript where he changed his testimony about those points. The issue of syphilis. I really regret it never had to come up. It came up after the immigration judge made it very clear he was going to take that Soviet trial, just like the trial in the United States. He was going to look at it. He wasn't going to look at the testimony. He was going to look at the trial. Okay. We brought that up. What was the testimony? What was the evidence? The U.S. attorney just said that she was found to be clean of syphilis. Look at the record. Look at the document. It says she was treated, and then she was released for treatment at home. That's all it says. But the point is not whether who gave syphilis. The point is she had a relationship with the police investigator's son. Should that be factored into whether this might have been a fabricated case? Yes, it should have. I appreciate the extra time, Your Honor, unless there's any questions. Any further questions? Thank you very much. And I know you've done this case pro bono, and we thank you for that. Thank you. Thank you.
judges: D Nelson, Thomas, Ezra